# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CADDY PRODUCTS, INC.,

Civil No. 05-800 (JRT/FLN)

Plaintiff,

v.

AMERICAN SEATING COMPANY,

**MEMORANDUM OPINION AND
ORDER CONSTRUING CLAIM
TERMS**

Defendant.

Richard G. Jensen and Dyanna L. Street, **FABYANSKE WESTRA HART & THOMSON, P.A.**, 800 LaSalle Avenue, Suite 1900, Minneapolis, MN 55402; Deirdre M. Kvale, Peter J. Ims, and Z. Peter Sawicki, **WESTMAN CHAMPLIN & KELLY, PA**, 900 Second Avenue South, Suite 1400, Minneapolis, MN 55402-3319, for plaintiff.

Conrad J. Clark, **CLARK & BRODY**, 1090 Vermont Avenue NW, Suite 250, Washington, DC 20005; Michael D. O'Neill, **JOHNSON PROVO-PETERSEN O'NEILL, LLP**, 332 Minnesota Street, Suite W-975, St. Paul, MN 55101; Todd R. Dickinson, **FISHER & DICKINSON P.C.**, 4764 East Fulton, Suite 204, Ada, MI 49301, for defendant.

Plaintiff Caddy Products, Inc. ("Caddy") and defendant American Seating Company ("ASC") manufacture products and accessories for public seating in theatres and stadiums.  Caddy brought this patent infringement action against ASC, alleging that stadium seat cupholders manufactured by ASC infringe on three separate patents owned by Caddy.  This matter is before the Court to construe disputed claim terms following entry of the parties' joint claim construction statement.

## BACKGROUND

Caddy manufactures a variety of products and accessories for public seating in theatres and stadiums, including cupholders that attach to the back of stadium seats. Caddy owns several patents related to its stadium seat cupholder. Caddy's U.S. Patent No. 5,421,638 (the '638 patent), entitled "Seat Attachment," describes the cupholder and its attachment mechanism to the stadium seat through the use of mounting brackets. Caddy's U.S. Patent No. RE39,392 (the "Reissue Patent"), entitled "Locking Bracket and Cupholder for Seat Frame," describes with greater specificity both the mounting brackets that attach to a particular style of seat standard, and the cupholder that attaches to the bracket. Finally, Caddy's U.S. Patent No. 5,628,103 (the '103 patent), the "Method Patent," generally describes the method for attaching the cupholder to the seat standard.[1]

Caddy's patented cupholder consists generally of a container holder that is attached to a stadium seat "standard" through the use of mounting brackets. The seat standard is the vertical portion of a stadium seat that supports the seat back and attaches the seat to the floor. The cupholder also has a "retainer," which attaches to portions of the seat standard and holds the container holder in place. The preferred embodiment that was included in Caddy's '638 patent application depicts the cupholder as including mounting brackets that extend above and below the container holder.

Defendant ASC also manufactures various seating products for use in buses, offices, and stadiums, including stadium seats and stadium seat cupholders. ASC

---

[1] The parties have stipulated that the claim terms contained in the '103 patent are no longer in dispute. This Memorandum Opinion and Order will construe only the disputed claim terms with respect to Caddy's '638 patent and the Reissue Patent.

purchases a portion of its stadium seat cupholders from Caddy for use with ASC-manufactured stadium seats.  ASC has also developed and manufactured its own stadium seat cupholder, which is the subject of this infringement action.  ASC's cupholder consists generally of a container holder and a single mounting bracket.  The mounting bracket is located behind the container holder and does not appear to extend above the container holder.

Caddy filed this infringement action against ASC in April 2005.  The parties filed a joint claim construction statement in March 2007.  Caddy and ASC dispute six claim terms with respect to Claim 13 of the '638 patent, and numerous claim terms with respect to the Reissue Patent.  The Court held a hearing on the disputed terms on August 22, 2007.

## ANALYSIS

Claim construction is a question of law for the Court.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).  The words of the claim are generally given their ordinary and customary meaning to one of ordinary skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  To ascertain this meaning, courts look to the words themselves, the remainder of the specification, and the prosecution history of the patent.  *Id.* at 1314.  However, the prosecution history often lacks the clarity of the specification and is thus less useful.  *Id.* at 1317.  Courts may also use extrinsic evidence, such as dictionaries or learned treatises, to define claim terms.  *Id.* However, extrinsic evidence has less significance than intrinsic evidence, and it cannot

establish a meaning of the claim term that is at odds with the intrinsic evidence. *Id.* at 1317-18.

The specification is the single best guide to the meaning of a disputed term. *Id.* at 1315. However, courts should not read a limitation from the specification into the claims. *Id.* at 1320. Indeed, the Federal Circuit has "repeatedly warned against confining the claims to those embodiments." *Id.* at 1323. In particular, the court has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.*

Courts also apply the doctrine of "claim differentiation" to ascertain the meaning of a claim term. Claim differentiation is "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368-69 (Fed. Cir. 2005) (internal citations omitted).

## I.  THE '638 PATENT

### A.  Disputed Claim Terms

The parties dispute six of the terms present in Claim 13 of the '638 patent. Claim 13 provides as follows:

> A seat attachment in combination with a seat standard, the seat standard being attachable to a support surface and being generally upright and having at least one upper seat bracket extending laterally therefrom to opposite sides of the standard for supporting separated seat backs for a pair of adjacent seats forwardly of the seat bracket the seat attachment comprising:
>
> a container holder having a generally open upwardly facing first end;

a mounting bracket attached to the container holder and having an upper end spaced from the first end of the container holder and having means for mounting the mounting bracket to the upper seat bracket to support the container holder behind the seat bracket; and

a retainer attached to the container holder and attached to portions of the standard for holding the container holder in substantially fixed relation to the standard.

For purposes of this Memorandum Opinion and Order, the Court will set forth each party's proposed construction after the disputed term.

### 1.   seat standard

| Caddy | A portion of a seat that supports the seat back, and that holds the seat back in fixed relation to a floor or other support surface on which the seat is placed |
|---|---|
| ASC | A portion of a seat that supports a seat back by engagement of the seat back with a bracket supported by the standard |

The parties agree that a seat standard is a portion of a seat that supports the seat back.  However, Caddy argues that ASC's proposed construction includes a description of a bracket, which is a separate claim term disputed by the parties.  The Court finds that the term "bracket" should be addressed separately from the construction of the term "seat standard."  *See Pause Tech., LLC   v. TiVo, Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) ("In construing claims . . . we must give each claim term the respect that it is due.").  Accordingly, the Court adopts Caddy's proposed definition for this term, a construction that does not address the separate claim term "bracket."

   **2.    bracket**

   Caddy    (a) A protrusion that supports something

            (b) A protrusion that extends laterally to opposite sides of
            a seat standard for supporting the seat backs of adjacent
            seats[2]

   ASC      A support having at least two portions; each portion
            projects from a respective side of the standard to engage
            a respective seat back on the rear of each seat back; the
            support is an upper support, which implies that there is
            another support below this upper support

Caddy argues that ASC's proposed construction unnecessarily incorporates language from the rest of Claim 13.   ASC responds that Caddy's use of the word "protrusion" is not proper because it implies a mere projection.   ASC contends that a definition of bracket must take into account the function of the bracket and its relationship between the standard and the seat back, and points to the claim language and specification to argue that there must be two separate brackets.

The Court finds that Caddy's proposed compromise definition adequately takes into account the concerns raised by ASC.   Specifically, Caddy's proposed definition references the bracket's support function.   Moreover, the Court finds that the surrounding language of Claim 13 further describes the functionality of the bracket with respect to the seat backs.   Finally, by arguing that the upper support implies the existence of a second support, ASC seeks to import a limitation into the term that is not present in the language of the claim itself, which provides merely that the cupholder has "at least one" upper seat bracket.   The fact that the preferred embodiment depicts two separate supports cannot be

--------

[2] Caddy includes this construction as a proposed compromise definition of the term.

used to limit the ordinary meaning of the claim terms.  *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).  For these reasons, the Court adopts Caddy's proposed compromise definition set forth in (b).

### 3.    generally open upwardly facing first end

| | |
|---|---|
| Caddy | A generally open portion of the container holder that faces in an upward direction |
| ASC | An attachment to the seat includes at least three parts, the first of which is a structure capable of receiving a container through an open end, the open end being positioned above a closed end to allow it to hold the container |

Caddy argues that ASC's proposed definition imports limitations that do not exist in the language of Claim 13 itself.  Specifically, Caddy argues that the language of Claim 13 does not require that the cupholder consist of three separate and distinct parts.[3]  The Court agrees.   While Claim 13 describes the cupholder as generally comprising a container holder, a mounting bracket, and a retainer, the language of the claim terms does not support ASC's proposed construction to the extent it limits the meaning of those terms to a description of three distinct and separate parts.

However, the Court finds that the remaining portion of ASC's proposed definition appropriately reflects the ordinary meaning of the claim term by including a reference to a closed end that allows the attachment to hold a container.   Accordingly, the Court adopts the following definition:  A structure capable of receiving a container through an

---

[3] ASC's proposed definition includes similar language for the next two claim terms.  The Court's analysis is therefore similarly applicable to the next two terms with respect to this portion of ASC's proposed definition.

open end, the open end being positioned above a closed end to allow it to hold the container.

**4.     having an upper end spaced from the first end of the container holder**

| | |
|---|---|
| Caddy | An upper portion of the mounting bracket located a distance from an upper portion of the container holder |
| ASC | The second part of the seat attachment is a support having upper and lower ends; the support is attached to the container holder at its lower end; its upper end is spaced above the open end of the container holder |

The core dispute here concerns the construction of the words "spaced from" the container holder. Caddy contends that "spaced from" means that the bracket is "located a distance from" the upper portion of the container holder. ASC argues that the bracket must be "spaced above" the container holder, arguing that the preferred embodiment shown in the specification clearly shows mounting brackets located above and below the cupholders. ASC also argues that the specification describes the bracket "extending from the first end of the container holder" and "extending from an upper end of the container holder." (Def.'s Ex. A.) Finally, ASC points to the prosecution history of Claim 13,[4] arguing that Caddy had to distinguish its patent from a prior art patent (the "Schaefer patent") on cupholders with mounting brackets located forward of, or directly behind, the cupholder.

The Court finds Caddy's proposed definition more persuasive. Even if the preferred embodiment shows the cupholder with a bracket above and below the container

---

[4] Claim 13 in the '638 patent was originally numbered claim 15 when the patent application was filed.

holder, the claim term directs only that the bracket be "spaced from" the container holder, and thus imposes no requirement that the bracket extend above it. The Court declines to read a limitation from the preferred embodiment or the specification into the claim term itself. *See Phillips*, 415 F.3d at 1323. Nor does the prosecution history demonstrate to the Court that the bracket must extend above the cupholder. Caddy distinguished its cupholders from the prior art largely on grounds that Caddy's cupholder attached to the seat standard, and not to the seatback, and had an orientation of 90 degrees from the prior art. Further, Caddy's Claim 1 describes "a first bracket extending from the upper end of the receptacle," suggesting Caddy was capable of describing a bracket that extends above the cupholder in another independent claim but chose not to do so in Claim 13. *See Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims."). For these reasons, the Court adopts Caddy's proposed definition of this claim term.

### 5. retainer

| | |
|---|---|
| Caddy | A portion that holds something |
| ASC | The third part of the seat attachment is an element distinct from the mounting bracket and located between the container holder and the seat standard to hold the container holder in place on the standard |

The parties dispute whether the retainer must be construed specifically as a distinct element of the cupholder. ASC points to the prosecution history to support its construction, noting that Caddy added the word "retainer" in its First Amendment to

Claim 13 and explained to the United States Patent and Trademark Office ("PTO") that the retainer "can be not only the guides that are shown in the present drawings but also the second mounting bracket that attaches to the lower seat bracket."  Caddy responds that its explanation of the First Amendment to the PTO stated merely that the retainer "can be" the guides shown in the preferred embodiment, or the second mounting bracket, and thus did not limit the definition of a retainer to the drawings in the preferred embodiment.  Caddy conceded at oral argument that the retainer and the mounting bracket are indeed different elements of Claim 13, but argues that ASC's proposed definition is simply not supported by the language of the claim term or by the surrounding context of Claim 13.

The Court agrees.  As with the previous two terms, ASC's proposed definition of "retainer" imports a limitation based on the general description in Claim 13 of the cupholder as comprised of a container holder, a mounting bracket, and a retainer.  It is certainly true that "the context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314.  Here, however, neither the claim term itself nor the surrounding claim language support a specific requirement that the retainer be a separate and distinct element of the cupholder.  *Cf. id.* (noting that the claim "'steel baffles' . . . strongly implies that the term 'baffles' does not inherently mean objects made of steel").  Indeed, the language of Claim 13 suggests that these three elements have some degree of overlapping functionality, which precludes the limitation proposed by ASC that each part be distinct and separate from each other.  For these reasons, the Court adopts Caddy's proposed definition of the term "retainer."

### 6.   attached

| Caddy | Connected to |
|---|---|
| ASC | The retainer must be attached to the container holder and attached to some part of the standard, which is distinct from the mounting bracket |

Caddy argues that its definition is supported by the plain and ordinary meaning of the word "attached," and that ASC's definition once again imports limitations that are not supported by the claim itself. ASC offers no argument in support of its proposed definition. The Court adopts the definition proposed by Caddy.

### 7.   substantially

| Caddy | Largely, but not necessarily entirely |
|---|---|
| ASC | Agreed |

The parties initially identified "substantially" as a disputed claim term. However, ASC has agreed to the definition proposed by Caddy. Accordingly, the Court adopts this definition.

## II. THE REISSUE PATENT

The Reissue Patent is entitled "Locking Bracket and Cupholder for Seat Frame," and it describes with greater specificity the mounting bracket that attaches to a particular style of seat standard and the container holder that attaches to the bracket. The Reissue Patent provides for a bracket that can be bolted in place at the same time the seat backs are bolted to the seat standard. The bracket has latches that allow the container holder to be installed by sliding it along mating guides in one direction, and that prevent removal of the container holder. The container holder has a wall that mates to the bracket, and

includes side skirt walls that shield the bolts that are used to attach the bracket and seat backs to the seat standard.

The Reissue Patent is a reissue of Caddy's original '101 patent.  Caddy had initially asserted infringement only with respect to Claim 15 of the original '101 patent. Upon reissue of the patent, however, Caddy substantially increased the number of its infringement claims.  Caddy now argues that ASC's cupholder product infringes at least 21 different claims of the Reissue Patent.  The parties dispute numerous claim terms with respect to the Reissue Patent, as discussed below.[5]

## A. Claim 15

Many of the disputed claim terms relate to Claim 15 of the Reissue Patent, which provides:

> A molded cupholder having a cupholder wall and a mounting portion, said mounting portion including a planar base wall having at least one wedge shaped latch having an inclined planar surface protruding outwardly from a plane surface of the planar base wall, and an outer end of the inclined planar surface forming a latch surface extending substantially perpendicularly from and joining the planar base surface, the wedge shaped latch positioned to engage a mating wedge shaped latch on a bracket on a seat standard,

> the cupholder mounting portion including a pair of spaced side shield walls that are on opposite sides of the base wall and extend outwardly from the plane surface, the spaced shield walls having inturned flanges at an outer end thereof for slidably receiving edges of a support wall on the bracket on the seat standard,

---

[5] Given the large number of disputed claims, this Memorandum Opinion and Order does not include the text of the claims themselves, with the exception of Claim 15.  In construing the claims of the Reissue Patent, the Court has considered each claim term in the context of the entire patent, including the specification and the unasserted claims where appropriate.

the latch surface of the wedge shaped latch on the base wall and a similar latch surface on a mating wedge shaped latch engaging as the side shield walls are slid along the support wall, and the side shield walls, the support wall and base wall enclosing the wedge shaped latch on the base wall and the mating wedge shaped latch.

1.    **planar base wall**

      Caddy     A generally flat base wall

      ASC       A generally flat wall arranged to be generally parallel to a portion of the cupholder wall

The planar base wall refers to that portion of the container holder that mounts to the bracket and provides support for the latch walls and side walls.  ASC argues that the term must be construed in the context of the specification to be generally parallel to the cupholder wall.  However, the Court finds nothing in the specification or the claim language itself that requires the base wall to be "generally parallel" to a portion of the cupholder wall.  Accordingly, the Court adopts Caddy's proposed definition.

2.    **wedge shaped latch having an inclined planar surface protruding outwardly**

      Caddy     (a) No definition necessary

                   (b) A portion that fastens, but does not necessarily lock, and that has a tapered surface that protrudes outwardly

      ASC       An element having a profile in the shape of a wedge formed by a flat surface that extends away from a planar "base wall" such that it forms an angle with the planar base wall to be inclined to it

ASC contends that the specification shows the latch surface extending away from the planar base wall, and forming an angle with the planar base wall.  ASC argues that because there are no alternative descriptions or structures set forth in the specification,

these characteristics must be read into the claim term definition.  However, the Federal Circuit has expressly rejected the proposition that patent claims must be construed as limited to the embodiment when the specification describes only a single embodiment. *Phillips*, 415 F.3d at 1323.  The Court finds that ASC's proposed definition unnecessarily incorporates limitations from the specification, and includes additional terms that are not necessary for an understanding of the term in the context of Claim 15.  Given the existing complexity of the claim term, the Court agrees with Caddy that no further definition of the term is required.

### 3.   support wall

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) A wall that provides support for something |
| ASC | Support wall 44 as disclosed in the figures, which is the part of a bracket bolted directly to the standard |

ASC argues that "support wall" must be defined solely by reference to the specification because otherwise the term is fatally vague under 35 U.S.C. § 112. However, ASC fails to explain how this term is fatally vague, or why such vagueness requires the Court to limit its construction to the specification.  Indeed, the Court finds that the term "support wall" is relatively clear in light of the fairly complex surrounding language of Claim 15.  Accordingly, the Court agrees with Caddy that no definition is necessary for this term.

### 4.    a pair of spaced side shield walls

| | |
|---|---|
| Caddy | (a) no definition necessary |
| | (b) two walls located a distance apart from each other that shield something |
| ASC | Two walls on the cupholder on opposite sides of the base wall that cover and protect bolts used to attach the bracket to the seat standard |

The parties dispute whether the side shield walls on the cupholder must be construed to cover the bolts that are used to attach the bracket to the seat standard. ASC points to the prosecution history of Claim 15, noting that the revised Claim 15 eliminated a term that had described the side shield walls as being able to receive a slidable track wall. In other words, ASC contends the prosecution history shows that the side shield walls were defined primarily with respect to their shielding function. In addition, ASC argues that Caddy needed to emphasize the shielding function of the side shield walls to distinguish its cupholders from the prior art. Caddy responds that ASC's proposed construction conflates "side shield walls" with the separate term "side skirts," which is the portion of the cupholder that shields the bolts from removal.

The Court agrees with ASC that the shielding function of the side shield walls should be taken into account in construing the claim term, and notes that, unlike many of the claim terms discussed above, the surrounding context of Claim 15 does not help clarify the meaning of this term. Although the "side skirts" shield the bolts from the side and rear of the seat standard, the Court finds that the specification compels a construction of "side shield walls" that incorporates the shielding function from the front of the cupholder. Caddy's proposed definition that the walls shield "something" is vague and

does not reflect the patent specification.  Rather, the specification demonstrates that both the side shield walls and the side skirts serve to shield the bolts that attach the mounting bracket to the seat standard.   However, the specification does not support ASC's proposed definition to the extent it requires the side shield wall to "cover" the bolts, since the specification describes the walls and skirts only as shielding the bolts.

The Court therefore adopts the following modified definition of this claim term: two walls on the cupholder on opposite sides of the base wall that shield bolts used to attach the bracket to the seat standard.

5.    **latch surface**

| | |
|---|---|
| Caddy | A surface that fastens, but does not necessarily lock |
| ASC | A generally flat surface on the wedge shaped latch that extends from an upper end of the inclined planar surface back to the planar base wall |

The Court finds that ASC's proposed definition effectively restates language already found in Claim 15.  The Court therefore adopts Caddy's proposed definition of this term.

6.    **to engage a mating wedge shaped latch**

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) To come or fit together |
| ASC | A bracket must also include an element in the shape of a wedge that mates with the wedge on the cupholder |

The parties primarily dispute the meaning of the term "engage," as the term "wedge shaped latch" has already been construed above.  ASC's proposed definition as

- 16 -

an element that "mates with" the wedge unnecessarily incorporates language that is already found in the term itself.  The Court agrees with Caddy that no definition of this term is needed.

### 7.    extend outwardly

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) Two walls on opposite sides of the base wall that protrude away from the base wall |
| ASC | Portions of the side shield walls protrude away from a "base wall" |

The Court finds that the language of Claim 15 supports Caddy's proposed alternative definition, which is nearly identical to ASC's proposed definition.  The Court therefore adopts Caddy's proposed alternative definition of the claim term.

### 8.    inturned flanges

| | |
|---|---|
| Caddy | A ridge or rim |
| ASC | A flange formed by a reversal in direction of a side shield wall to engage the support wall 44 |

Caddy argues that ASC's proposed definition imports a limitation on the claim term by specifically referencing the specification.  The Court finds that reference to the specification is not necessary for this term, as the ordinary meaning of the term and the surrounding language are sufficient to define "inturned flanges."  The Court declines to limit the claim term to the preferred embodiment set forth in the specification.  *See Phillips*, 415 F.3d at 1323.  The Court therefore adopts Caddy's proposed definition for this term.

9.   **bracket**

    Caddy      (a) No definition necessary

                       (b) A projection that supports something

    ASC        A bracket such as shown at 32 in the figures that is bolted
                       to the standard

ASC's proposed definition once again seeks to define the claim term solely by reference to the preferred embodiment.  The Federal Circuit has repeatedly cautioned that such a construction should not be limited to the specification.  *See, e.g.*, *Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (noting that a claim may include "different subject matter than is illustrated in the specific embodiments in the specification").  In accordance with the definition of "bracket" in the '638 patent, the Court adopts Caddy's proposed compromise definition of this claim term.

10.   **engaging**

    Caddy      (a) No definition necessary

                       (b) Coming or fitting together

    ASC        The two matching wedge shaped latches are configured
                       to fit together in mating fashion as the cup holder is
                       attached to the bracket

The Court agrees with Caddy that the ordinary meaning of the claim term requires no definition.

**11.   enclosing**

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) Surrounding |
| ASC | The enumerated parts, i.e., the side shield walls, the support wall, and the base wall, completely surround the two mating wedge shaped latches |

As with the term "engaging," the Court finds that the ordinary meaning of this term is sufficiently clear and requires no further definition.  ASC's proposed definition effectively restates language already present in Claim 15.

## B.  Claim 11

The parties dispute four claim terms contained in Claim 11 of the Reissue Patent.

### 1.   wedge lug having a wedge surface sloped in a first direction

| | |
|---|---|
| Caddy | A protrusion that has a tapered or wedge-shaped surface |
| ASC | A wedge shaped, fixed protrusion that is configured to mate with a corresponding part on the cupholder to hold the cupholder to the bracket unless detached with a special tool |

ASC contends that the specification specifically states that removal of the cupholder will cause destruction of the cupholder or mounting bracket unless a "special tool" is used for the removal.  ASC argues that this "special tool" must be included in the claim term itself.  Caddy responds that nothing in the claim language requires that the wedge lug be "fixed," or contains any reference to a special tool.

The Court finds that neither the language of Claim 11 nor the specification requires that the wedge lug be "fixed."   Further, this claim term does not require a

construction that includes reference to a "special tool."[6]  The Court therefore adopts the construction proposed by Caddy.

**2.    latch portion of the mounting bracket that is defined by generally vertical side edges**

|        |                                                                              |
|--------|------------------------------------------------------------------------------|
| Caddy  | (a) No definition necessary                                                   |
|        | (b) The portion of the mounting bracket that latches the cupholder to the mounting bracket |
| ASC    | The protrusion is located on a portion of the bracket that has side edges essentially vertical |

ASC provides no supporting argument for its proposed substitution of "essentially" vertical side edges in place of "generally" vertical side edges.  The Court agrees with Caddy that no definition of this claim term is necessary.

**3.    mate with**

|        |                                                                              |
|--------|------------------------------------------------------------------------------|
| Caddy  | Join or fit together                                                          |
| ASC    | The cupholder must include an element in the shape of a wedge that mates with the wedge lug on the bracket |

ASC has provided no supporting argument for its proposed construction.  The Court finds that ASC's proposed definition is not supported by the claim language or the specification, and merely restates the very term it purports to define.  The Court adopts Caddy's proposed definition of the term.

---

[6] As discussed below, however, the Court agrees with ASC that reference to a "special tool" is appropriate for other claim terms.

### 4.    prevent removal of the cupholder in a second direction

| Caddy | Removal of the cupholder in a second direction is restricted or hindered |
|---|---|
| ASC | The parts engage securely and can be separated only by the use of a special tool |

ASC argues once again that the specification provides that removal of the cupholder will cause destruction of the cupholder or mounting bracket unless a "special tool" is used for the removal, and that this "special tool" must be included in the claim term itself.  Caddy argues that reference to a special tool has no support either in the claim term or in the specification.

The Court agrees that reference to a special tool to remove the cupholder is appropriate in the context of the claim language and the specification.   While the specification should not be used to import a limitation on the claim terms, claims should nonetheless be construed in light of the specification.  *See Phillips*, 415 F.3d at 1323.  In deciphering whether the specification serves to limit the claim term or merely to inform its construction, the Court must consider "whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Id.*

Here, the specification discloses that removal of the cupholder will cause destruction of the bracket or cupholder unless a special tool is used.  The Court agrees with ASC that one skilled in the art would not interpret "removal" of the cupholder to include the destruction or disfiguration of the cupholder.   Indeed, nothing in the

specification suggests that the use of a special tool to remove the cupholder without destroying it was merely one of several possible examples of the invention.  *See id.*  The Court finds that consideration of the specification's disclosure that a special tool is required to properly remove the cupholder does not improperly import a limitation on the claim term, and is necessary to properly interpret the term.  The Court therefore adopts ASC's proposed definition of this term.

### C. Claim 16

#### 1.   support wall

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) A wall that provides support for something |
| ASC | A wall substantially as shown at 44 in the figures that is directly bolted to the seat standard |

For the reasons set forth with respect to the identical term in Claim 15, *see supra* II.A.3, the Court finds that no definition of the term is necessary.

#### 2.   latch lug

| | |
|---|---|
| Caddy | A protruding portion to fasten, but not necessarily lock |
| ASC | A fixed protrusion that is configured to mate with a corresponding part on the cupholder to hold the cupholder to the bracket unless detached with a special tool |

Caddy argues that the claim language and specification do not support ASC's proposed definition of a "fixed" latch lug.  The Court agrees.  The Court further finds that ASC's proposed reference to a "special tool" is appropriate with respect to the remaining

term in Claim 16, but that it is not necessary to construe the term "latch lug" as it appears in Claim 16.  The Court therefore adopts Caddy's proposed definition of this term.

### 3. latch lug mates with the drink cupholder to prevent removal of the drink cupholder in a second direction

| | |
|---|---|
| Caddy | The latch lug joints or fits together with the drink cupholder to hinder or restrict removal of the drink cupholder in a second direction |
| ASC | The latch lug and the cupholder mate as the cupholder is slid along the bracket |

At oral argument, Caddy stated that it agreed with ASC's proposed definition.  As discussed above, however, ASC also disputes the construction of the term "removal" and proposes that the term incorporate reference to a "special tool" that is required for the removal of the cupholder.[7]  As discussed above, the Court finds that reference to a "special tool" is appropriate with respect to "removal."  Thus, the Court adopts the following modified construction of the disputed claim term:  the latch lug and the cupholder mate as the cupholder is slid along the bracket to hold the cupholder to the bracket unless detached with a special tool.

---

[7] Although ASC proposed the "special tool" language with respect to the "latch lug" term, the Court finds that the dispute is more appropriately directed toward the term "removal," as discussed in the context of Claim 11.

### D. Claim 17

#### 1. wedge shaped latch having an inclined planar surface protruding outwardly

> Caddy (a) No definition necessary
>
>    (b) A portion that fastens, but does not necessarily lock, and that has a tapered surface that protrudes outwardly
>
> ASC A wedge shaped, fixed protrusion that is configured to mate with a corresponding part on the cupholder to hold the cupholder to the bracket unless detached with a special tool

The Court construed an identical term that appeared in Claim 15, *see supra* II.A.2. For the reasons discussed above, the Court agrees with Caddy that no definition of the claim term is necessary. Further, any reference to a "special tool" is more appropriately directed to the definition of the term "restrict," as discussed below, and not the present claim term.

#### 2. extending substantially perpendicularly to a holder wall

> Caddy Extending substantially at a right angle to a wall of the cupholder
>
> ASC The surface must be perpendicular to the outer wall of the cupholder and extend away from the cupholder

The Court agrees with Caddy that nothing in the claim language or the specification requires that the latch surface extend away from the cupholder. The specification provides that the latch walls have latch "recesses" with "upwardly facing shoulder surfaces." The remainder of ASC's proposed definition essentially restates the language of the claim itself. Accordingly, the Court adopts Caddy's proposed definition of the term.

- 24 -

### 3.    a pair of spaced side shield walls

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) Two walls located a distance apart from each other that shield something |
| ASC | Two walls on the cupholder on opposite sides of the wall of the cupholder that cover and protect bolts used to attach the bracket to the seat standard |

The Court construed an identical term in connection with Claim 15, *see supra* II.A.4.  For the reasons discussed above, the Court adopts the following definition:  two walls on the cupholder on opposite sides of the base wall that shield bolts used to attach the bracket to the seat standard.

### 4.    inturned flanges

| | |
|---|---|
| Caddy | A ridge or rim |
| ASC | A flange formed by a reversal in direction of a side shield wall to engage a "guide wall" |

The Court construed this same term in connection with claim 15, *see supra* II.A.8, and adopts Caddy's proposed definition for the reasons set forth above.

### 5.    restrict

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) Limit |
| ASC | The parts engage securely and can be separated only by the use of a special tool |

The Court construes this term in accordance with its construction of the term "prevent removal" in Claim 11, *supra* II.B.4.  The Court therefore adopts ASC's proposed construction of the term.

**E.  Claim 19**

    **1.    a dimension or width of the cupholder portion obscures the fastener opening or openings**

        Caddy    (a) No definition necessary

                    (b) Having a width that limits the visibility of, or access to, the fastener opening or openings when the cupholder portion is attached to the bracket

        ASC      Two walls on the cupholder on opposite sides of the wall of the cupholder cover and protect bolts used to attach the bracket to the seat standard

Caddy argues that ASC's proposed definition of "obscures" is inconsistent with the ordinary meaning of the term and the specification, which provides merely that the side skirts "shield" the mounting bolts from removal.  The Court agrees.  As discussed in the context of Claim 15, *see supra* II.A.4, the specification does not support ASC's proposed definition to the extent it provides that the cupholder "cover and protect" the bolts.  The Court finds that the term "obscures" requires no further definition.

**F.  Claim 14**

    **1.    skirt portion**

        Caddy    Outer portion

        ASC      Two walls on the cupholder on opposite sides of the wall of the cupholder that cover and protect bolts used to attach the bracket to the seat standard

Caddy argues that nothing in the claim language or specification requires the term "skirt portion" to include reference to the covering and protecting of the bolts.  ASC has provided no supporting argument for its proposed definition.  The Court agrees with

Caddy that ASC's proposed additional language is unnecessary for the term "skirt portion." Further, as discussed above, the specification does not support a definition that requires the skirt portion to "cover and protect" the bolts, *see supra* II.A.4. The Court therefore adopts Caddy's proposed definition of this claim term.

### 2. to shield

> Caddy     To obscure
>
> ASC       To completely cover

As discussed in the context of Claim 15, the specification does not support ASC's proposed definition to the extent it requires the skirt portion of the cupholder to "completely cover" the bolts, *see supra* II.A.4. The Court adopts Caddy's proposed definition.

### G. Claims 20, 21, 23 and 24

The parties dispute several terms that are contained in each of Claims 20, 21, 23 and 24 of the Reissue Patent.[8] The Court construes those terms as follows:

---

[8] The parties also dispute the terms "restrict" and "sized to obscure," which the Court has construed in connection with other claims in the Reissue Patent. *See supra* II.D.5, II.E.1. The Court construes these claim terms consistent with the definitions set forth above.

**1.     a latching mechanism to releasably latch**

| | |
|---|---|
| Caddy | A mechanism that fastens something such that it can be removed |
| ASC | A mechanism formed by two mating wedge shaped elements |

ASC provides no supporting argument in favor of its proposed definition.   The Court agrees with Caddy that nothing in the claim language or the specification requires that the latching mechanism be formed by two mating wedge shaped elements.   The Court therefore adopts Caddy's proposed definition of this claim term.

**2.     wedged shaped latch lug**

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) A protruding portion to fasten, but not necessarily lock, and that has a tapered surface |
| ASC | A wedge shaped, fixed protrusion that is configured to mate with a corresponding part on the cupholder to hold the cupholder to the bracket unless detached with a special tool |

The Court construes this claim term in accordance with its prior construction of "latch lug," *see supra* II.C.2.   ASC seeks to include a reference to the "special tool" as part of the term definition.   While reference to the special tool is appropriate with respect to the terms "remove" and "restrict," the Court finds that any such reference is not appropriate with respect to the instant claim term.   The Court therefore adopts Caddy's proposed alternative definition of this claim term.

**H. Claims 2, 5, 6, and 10**

The parties also dispute the definitions of terms contained in Claims 2, 5, 6, and 10 of the Reissue Patent. The disputed terms in Claims 2 and 6 are identical to terms construed in other claims of the Reissue Patent, and the Court therefore adopts the constructions of those terms as set forth above.[9] The Court construes the remaining terms as follows:

    1.    **complimentary portion on the holder wall and the at least one latch lug on the guide wall of the bracket being mateable with the complimentary portion to secure the cupholder relative to the bracket**

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) A portion of the holder wall that is capable of being mated or joined with one or more latch lugs on the guide wall of the bracket to secure the cupholder relative to the bracket |
| ASC | The holder must include a wedge shaped surface that mates with a wedge shaped surface on the bracket |

Caddy argues that ASC's proposed definition is divorced from the language of the claim and has no support in the specification. ASC fails to provide any argument in support of its proposed definition, and the Court can find no support in the specification for ASC's proposed limitation that the holder "must include" a wedge shaped surface. The Court therefore finds that no definition of this claim term is required.

---

[9] Specifically, the parties dispute the term "restrict" in Claim 2. The Court adopts the construction set forth in Claim 17, *see supra* II.D.5. The parties also dispute the term "obscure" in Claim 6. The Court adopts the construction of this term as set forth in Claims 15 and 19, *see supra* II.E.1 and II.A.4.

**2.     recess**

| | |
|---|---|
| Caddy | (a) No definition necessary |
| | (b) A space or opening in an object |
| ASC | A space formed in a latch wall, the latch wall protruding from the cupholder wall |

ASC points to nothing in the claim language or the specification to support its inclusion of a "latch wall protruding from the cupholder wall" in the term definition.  The Court finds that neither the claim itself nor the specification require such a construction, and agrees with Caddy that no definition of the term is required.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, the Court hereby **ADOPTS** the construction of the claim terms as set forth in the Memorandum accompanying this Order.


DATED:    April 4, 2008                                  s/ John R. Tunheim
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                 United States District Judge